**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**CIVIL DIVISION**

HOWARD FISH, JR                                    )
308 McDowell Street                                )
Plainfield, New Jersey 07063                       )
                                                   )
                                                   )
 Plaintiff,                                        )
                                                   )
     vs.                                           )
                                                   )
MAYOR AND CITY COUNCIL OF                           )
BALTIMORE                                          )
Baltimore City Hall                                )
100 Holiday Street                                 )
Room 250                                           )   CASE NO.: 1:17-CV-01438
Baltimore, Maryland 21202                          )
                                                   )
Serve:  David Ralph                                )
        City Solicitor                             )
        Baltimore City Law Department              )
        100 N. Holliday Street                     )
        Suite 101                                  )
        Baltimore, MD 21202                        )
                                                   )
And                                                )
                                                   )
                                                   )
BALTIMORE CITY POLICE DEPARTMENT )
Office of the Commissioner                         )
Baltimore City Hall                                )
100 Holiday Street                                 )
Room 250                                           )
Baltimore, Maryland 21202                          )
                                                   )
Serve Commissioner: Kevin Davis                    )
Office of the Commissioner                         )
Baltimore City Hall                                )
100 Holiday Street                                 )
Room 250                                           )
Baltimore, Maryland 21202                          )

And )
)
)
OFFICER KEVIN TOADE )
Police Officer 1 )
Baltimore City Police Department )
100 Holiday Street )
Baltimore City Hall )
Room 250 )
Baltimore, Maryland 21202 )
)
)
And )
)
OFFICER ALLEN )
Police Officer 2 )
Baltimore City Police Department )
Baltimore City Hall )
100 Holiday Street )
Room 250 )
Baltimore, Maryland 21202 )
)
And )
)
HYATT HOTELS CORPORATION OF )
MARYLAND )
300 Light Street )
Baltimore, MD 21202 )
)
Serve Resident Agent: )
CSC-Lawyers Incorporating Service Company )
7 St. Paul Street )
Suite 820 )
Baltimore, MD 21202 )
)
And )
)
BISTRO 300 LOUNGE )
300 Light Street )
Baltimore, Maryland 21202 )
)
And )
)
DAVE PECKOO SECURITY COMPANY )
Serve: Dave Peckoo )

281 Jenny Dr.                                    )
Westminster, Maryland 21158-9474                 )
                                                 )
And                                              )
                                                 )
DAVE  PECKOO                                      )
281 Jenny Dr.                                    )
Westminster, Maryland 21158-9474                 )
                                                 )
                                                 )
Defendants.                                      )

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Howard Fish, Jr., by and through his attorneys, Damani K.

Ingram, and the Ingram Firm, LLC., and sue the defendants, the Mayor of Baltimore City, City

Council of Baltimore City, Baltimore City Police Department("BPD"), Officer Allen and Officer

Kevin Toade who are employees of the Baltimore City Police Department, the Hyatt Regency

Corporation, BISTRO 300 Lounge [Restaurant], and Dave Peckoo for cause of action state as

follows:

1.   This Court has jurisdiction pursuant to Title 28 Section 1331, where jurisdiction

     arises under the Constitution of the United States, plaintiff alleges violations of

     his Fourth Amendment Civil Rights as stated under Section 1983 of the United

     States Code.

2.   Plaintiff is an adult citizen of the State of New Jersey.

3.   Venue is proper in the District Court for Maryland in that all actions took place in

     Baltimore City, Maryland.

4.   That at all times hereinafter mentioned, defendant Mayor of Baltimore City, Maryland

     oversaw operating the Baltimore City Police Department.

5.   BPD is the chief law enforcement agency in Baltimore and has jurisdiction throughout the City.

6. BPD employs approximately 3,000 personnel, including approximately 2,600 sworn officers. BPD's jurisdiction is divided geographically among nine police districts that include local police stationhouses, referred to as district headquarters.

7. During conduct described in this Complaint, Defendants have received federal financial assistance from the United States Department of Justice, either directly or through another recipient of federal financial assistance.

8. As a condition of receiving federal financial assistance, the City and BPD certified that they would comply with all requirements imposed by Title VI and the federal regulations implementing Title VI. The assurances signed by the City bind subsequent recipients, including BPD to which the City disburses the funds. The City and BPD are responsible for ensuring that BPD complies with the requirements of Title VI and its implementing regulations.

9. During conduct described in this Complaint, Defendants have received funds from the Office of Justice Programs ("OJP") that are subject to the requirements of the Safe Streets Act.

10. As a condition of receiving OJP grants, the City and BPD certified that they would comply with all requirements imposed by the Safe Streets Act.

11. There is longstanding recognition of the need to reform BPD to ensure that BPD officers do not violate the constitutional rights of City residents.

12. In the late 1990s, BPD adopted zero tolerance policing strategies that prioritized officers making large numbers of stops, searches, and arrests for misdemeanor offenses without ensuring robust oversight to hold officers accountable for misconduct and protect the constitutional rights of City residents. Current BPD Commissioner Kevin Davis and his

predecessor, Anthony W. Batts, have both acknowledged publicly that this approach eroded community trust and impeded efforts to build partnerships that are central to effective policing.

13. Following the April 2015 death of Freddie Gray in police custody, Baltimore Mayor Stephanie Rawlings-Blake asked the United States Department of Justice, Civil Rights Division, to conduct a pattern-or-practice investigation of BPD's police practices. The Civil Rights Division announced that it would conduct a pattern-or-practice investigation on May 8, 2015, and issued a Findings Report on August 10, 2016.

14. BPD engages in a pattern or practice of conduct that violates the Constitution and federal laws. These violations include the following:

a. Making unconstitutional stops, searches, and arrests, in violation of the Fourth and Fourteenth Amendments;

b. Using excessive force, in violation of the Fourth Amendment.

c. Retaliating against individuals engaging in constitutionally-protected expression,   in violation of the First Amendment.

d. Using enforcement strategies that disproportionately impact African Americans,   in violation of Title VI, the Title VI implementing regulations, 28 C.F.R.   §§ 42.101-112, and the Safe Streets Act and its implementing regulations.

e. Failing to make reasonable modifications to their practices regarding the use of   force against individuals with disabilities, in violation of Title II.

15. BPD's violations of the Constitution and federal law are driven by BPD's practices – systemic deficiencies in policies, training, supervision, and accountability structures.

16. Defendants have been aware of these structural challenges for many years, but have not taken adequate steps to comply with the Constitution and federal law.

17.  BPD engages in a pattern or practice of discrimination, through its use of enforcement strategies and other practices, that violate Title VI and the Safe Streets Act, which prohibit police

practices that create an unjustified disparate impact based on race and other demographic factors.

18. BPD engages in a pattern or practice of discrimination, through its use of enforcement strategies and other practices, that violate Title VI and the Safe Streets Act, which prohibit police practices that create an unjustified disparate impact based on race and other demographic factors.

19. These racial disparities are driven in part by deficient policies, training, supervision, and accountability.

20. BPD did not institute a "Fair and Impartial Policing" policy until 2015, leaving officers without guidance on how to lawfully perform their duties in an impartial manner. In some cases, BPD supervisors have encouraged racial profiling directly.

21. BPD officers have also used racial slurs and other derogatory language to address or refer to African Americans. When BPD has received complaints about such conduct, it has often misclassified or failed to investigate them.

22. In many cases, BPD investigators make comments during sexual assault investigations showing undue skepticism of victims' accounts and fail to collect available evidence that could corroborate them.

23. BPD engages in a pattern or practice of using force that is objectively unreasonable under the circumstances in which the force is applied, including the threat posed by the suspect and the severity of the alleged underlying crime, in violation of the Fourth Amendment.

a)  BPD uses ineffective tactics that escalate encounters, leading to the use of physical force when it is not necessary to resolve an incident.

b)  BPD uses unreasonable force against people who present little or no threat to them or others. For example, officers have used unreasonable force against individuals who are already restrained, who are fleeing away from officers or who are cooperating with officers and pose no danger.

c)  BPD uses unreasonable force against juveniles without applying accepted tactics to account for the age and developmental status of the youth they encounter.

d)  BPD uses unreasonable force against individuals with mental health disabilities.

24.  That at all times hereinafter mentioned defendant Officer Kevin Toade was a member of the Baltimore City Police Department, acting as an agent, servant and employee of Baltimore City, Maryland, within the scope of his employment.

25. That at all times hereinafter mentioned, defendant Officer Allen was a member of the Baltimore City Police Department, acting as an agent, servant and employee of Baltimore City, Maryland, within the scope of his employment

26. That all times herein mentioned, defendant Hyatt Regency Corporation [doing business as Hyatt Regency Baltimore Inner Harbor] was operating a hotel in Baltimore.

27.  That on or about October 21, 2014, Plaintiff provided notice to defendants pursuant to Maryland Local Government Tort Claims Act, Md. Ann. Code, Cts & Jud. Proc. §5-301(d)(21).

28. That all times hereinafter mentioned, defendant Bistro 300 was operating a restaurant inside the Hyatt Regency Hotel Baltimore Inner Harbor.

29. That at all times hereinafter mentioned, defendant Dave Peckoo was an employee, agent or sub-contractor with the Hyatt Regency Corporation, or he was an employee with John Doe Security Company providing security guard service for the Hyatt Regency Baltimore Inner Harbor Hotel to the Bistro 300 Restaurant.

30. On or about June 7, 2014 Plaintiff was invited to dine with a friend, Mr. Spencer Corbett, who was staying in the Hyatt Regency Inner Harbor.   Plaintiff and friends were in town for the Capital Jazz Festival at the Baltimore Inner Harbor that was just ended that evening.

31. Upon his arrival to the hotel restaurant late in the evening Plaintiff and friends took a seat inside [along the periphery] of the Bistro 300 Lounge.    Plaintiff's friend, Spencer Corbett

asked the waitress for a menu and the waitress replied that "I can only serve certain people at this time"!   Being surprised and feeling insulted Mr. Corbett asked the waitress "who are these certain people?"

32.  The waitress briefly pondered and replied "ok.  I will take your order"!  They were subsequently served their food and beverages.

33. While Plaintiff, Spencer Corbett and their two female companions were eating they were approached by a stranger who informed them that they "need to hurry up and eat" stating that the restaurant would be closing soon.   Plaintiff and his friends were perplexed by this sudden intrusion but complied and quickly consumed their food and drinks.

34. Immediately thereafter, a second stranger who failed to identify himself but assuming a posture or color of authority, Dave Peckoo, rushed to the table as a very aggressive and angry stranger, shouted in a very loud and hostile tone that Plaintiff and his friends immediately leave the restaurant.  Spencer Corbett informed Dave Peckoo that he was staying in a suite at the hotel and that he was a frequent patron of the Hyatt Regency Hotels.   It should be noted that the Bistro 300 Lounge advertises that it is open to all members of the public whether they are lodging at the hotel does not matter.   Mr. Corbett believed that by informing Dave Peckoo that he had a room at the hotel that Dave Peckoo might extend him ordinary common courtesy to which he had a right.

35. Instead Dave Peckoo confronted Spencer Corbett face-to-face at which time Plaintiff ask Dave Peckoo to refrain himself.   Plaintiff had no idea who Dave Peckoo was other than being a threatening hostile stranger.

36. Plaintiff, Mr. Corbett and their companions stood up from the table whereupon Dave Peckoo pushed Mr. Corbett and they began to scuffle which resulted in one of their female companions being knocked to the floor by Dave Peckoo.

37. Plaintiff attempted to de-escalate the confrontation between Dave Peckoo and Mr. Corbett but was met with the defendant retorting "get out of my face……I will lock you up." Dave Peckoo rushed plaintiff, pushing him whereupon plaintiff responded in kind in an act of self-defense.  Plaintiff quickly retreated but the defendant Dave Peckoo rushed him once again but was restrained by two observers.  After the altercation, defendant Dave Peckoo hurriedly left the area; going downstairs.

38. Plaintiff, Mr. Corbett and friends were humiliated, shaken and outraged by how Dave Peckoo and the staff of the restaurant had [mis]treated them.   They were insulted, humiliated and assaulted without provocation or justification.

39.  Plaintiff and his friends, particularly plaintiff and the female that was knocked to the floor, were still quite disturbed by what had transpired and were discussing their legal options.

40. Long after the altercation, Officer Kevin Toade and Officer Allen of the Baltimore Police Department arrived on the scene of the hotel. The two Baltimore Police Officers were accompanied by Dave Peckoo.

41. Plaintiff was relieved to see Baltimore City Police officers because now he could file a criminal complaint against Dave Peckoo for assaulting him and his friends and explain the circumstances leading up to the disturbing altercation.

42. The police officers approached Plaintiff and asked him to come to them whereupon the plaintiff complied and began to walk towards the police officers as instructed.

43. Although Plaintiff obeyed the officers' request to approach them Defendants Officer Tode and Officer Allen as well as John Doe Security Officer attacked plaintiff, punched him in the face [although he was wearing glasses] violently tackling him to the ground causing serious bodily injury to Plaintiff's face, shoulder, knee and back.

44. The defendants assaulted the plaintiff without asking him any questions about what had taken place earlier in the restaurant, having no interest in learning plaintiff's side of the story. Obviously, the defendant police officers had already concluded [without investigating] that plaintiff and his friends had committed a crime and that they were no entitled to an interview; they were in fact "guilty by being black."

45. Plaintiff's friend Spencer Corbett was appalled by what he had witnessed and yells out to Defendants Officer Kevin W. Tode, Officer Allen and Dave Peckoo "you didn't have to do that" as he attempted to pull Dave Peckoo from the back of Plaintiff who was being straddled face down on the ground bleeding from his face.

46. Plaintiff and Mr. Corbett were subsequently handcuffed and arrested being charged with second degree assault of Defendant Dave Peckoo.

47. Plaintiff and Spencer Corbett were then escorted from the Hyatt Regency Hotel to a Baltimore City Police prisoners transport wagon. Plaintiff's injuries prevented him from entering the transport wagon without police assistance. Plaintiff and Spencer Corbett were then transported to the police precinct to be processed for second degree assault of Dave Peckoo.

48. When Plaintiff arrived at the police precinct he asked to be taken to the hospital because he was in severe pain and bleeding from the face from being assaulted by Officers Tode, Officer Allen and Dave Peckoo.

49. The officer in charge at the police precinct had a para-medic observe only Plaintiff's bleeding head wound and concluded that the severe injuries that were causing plaintiff excruciating pain did not necessitate plaintiff being attended to by a medical doctor nor plaintiff being transported to a hospital for treatment.

50. After Plaintiff was released from police custody, he checked himself into a hospital and was treated for multiple severe injuries to his face, eye, shoulder, tearing a tendon in his knee and rupturing a disc in his back.

51. On or about November 21, 2014 the second-degree assault charges against both Mr. Corbett and Plaintiff were dismissed.

## COUNT I

### (Assault and Battery – Defendant Dave Peckoo)

52. The plaintiff, Howard Fish, adopts and incorporates by reference each allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53. By the actions described above defendant Dave Peckoo who was then and there acting within the scope of his employment intentionally verbally and physically assaulted the plaintiff. Defendant Dave Peckoo used force without proper causes and justification.  Further, the actions of defendant Officer Dave Peckoo constituted the use of unreasonable and/or excessive force and multiply batteries.

54. The aforementioned assault and battery by defendant Dave Peckoo were harmful, offensive, was not the use of reasonable force, and constitutes actual malice.

55. That as a direct and approximate cause of defendant Dave Peckoo's actions the plaintiff suffered multiple injuries to his back, shoulder and other injures.

56. Wherefore the plaintiff demands against defendant Dave Peckoo the sum of One Million Dollars ($1,000,000) in compensatory damages and Three Million Dollars ($3,000,000) in punitive damages plus interest from the date of this occurrence, attorney fees and the cost of the action.

## COUNT II

### (Battery – Defendants Officer Allen, Officer Kevin Toade and Dave Peckoo)

57.   The plaintiff, Howard Fish, adopt and incorporate by reference each and every allegation contained in paragraphs 1 through 56 as if fully set forth herein.

58.   By the actions described above, defendants Officer Toade, Officer Allen and Dave Peckoo who were then and there acting within the scope of their respective employment intentionally and maliciously tackled the Plaintiff to the ground and repeatedly punched him to the face and elsewhere.  The defendants used force without proper causes, as there were many reasonable alternatives other than using brute force.  Further, the actions by defendants constituted the use of excessive force and a multiple battery.

59. The assault by the defendants was harmful, offensive, was not the use of reasonable force, and constituted actual malice.

60. That as a direct and proximate result of the actions and conduct of defendants Officer Kevin Toade, Officer Allen and David Peckoo plaintiff suffered severe injuries to his head, and back, cervical and lumbar strain, closed head injuries with severe post-traumatic headaches, facial gashes and scarring, cervical sprain, thoracic sprains, shoulder sprains, knee injuries, blurred vision, dehydration, chest contusion, and hospitalization.  These severe injuries

resulted in physical therapy, medical expenses, past, present, and future, other medical treatment and care, mental anguish, loss of enjoyment of life, humiliation embarrassment, shame, paranoid feelings, sleep disorder, anxiety disorder, and other injuries and damages.

WHEREFORE, the plaintiff Howard Fish demands judgment against defendants Officer Kevin Toade, Officer Allen, and Dave Peckoo jointly and severally, in the sum of One Million Dollars ($1,000,000) as compensatory damages and Three Million Dollars ($3,000,000) as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

## COUNT III

**(Violation of Maryland Declaration of Rights, Articles 24 and 26**
**By defendants, Baltimore City, Baltimore City Police Department, Officer Kevin Toade**
**and Officer Allen)**

61.   That the plaintiff, Howard Fish, adopts and incorporates by reference each allegation contained in Count 1 and Count II, and paragraphs 1 through 60, as if fully set forth herein.

62. By the actions described above, including wrongfully grabbing the plaintiff, twisting his arms behind his back, throwing him to the ground headfirst, mounting while he's one the ground, handcuffing him, arresting him, detaining him and subsequent wrongful prosecution of plaintiff by defendants deprived the plaintiff of the following clearly established constitutional rights as enunciated in Articles 24 and 26 of the Maryland Declaration of Rights.  That defendant, Baltimore City, is liable for all actions and violations of Maryland State Declaration of Rights under the principles of respondent superior, for all actions for all actions of defendants Officer Allen, Officer Kevin Toade, and the Baltimore City Police Department responsible for these violations while Baltimore City Police Department Officers.  All defendants deprived the

plaintiff, Howard Fish, of the following clearly established constitutional rights, as enunciated in Articles 24, and 26 of the Maryland Declaration of Rights including, but not limited to:

a.   Freedom from the use of excessive and unreasonable force;

b.   Freedom from the deprivation of liberty without due process of law;

c.   Freedom from illegal detention;

d.   Freedom from unreasonable search and seizures; and,

e.   Freedom from unreasonable use of police power.

63. That as a direct and proximate result of the actions and conduct of defendants Baltimore City, Officer Allen and Officer Kevin Toade, the plaintiff, Howard Fish suffered injuries to his head and back, cervical and lumbar strain, closed head injuries with severe post-traumatic headaches, serious injury to the knee and  back, hospitalization, physical therapy, medical expenses, past, present, and future, other medical treatment and care, mental anguish, post-traumatic stress disorder, loss of enjoyment, humiliation, embarrassment, shame, paranoid feelings, sleep disorder, anxiety disorder, and other injuries and damages.

WHEREFORE, Plaintiff Howard Fish demands judgment against defendants, Baltimore City, Officer Allen and Officer Kevin Toade jointly and severally, in the sum of One Million Dollars [$1,000,000] as compensatory damages and Three Million Dollars [$3,000,000] as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

## COUNT IV

### (False Arrest)

64. The plaintiff Howard Fish adopts and incorporates each allegation contained in Counts 1, 2 and 3, and paragraphs 1 through 63 as if fully set herein.

65. That on or about June 7, 2014, defendants Kevin Toade and Allen, acting as officers of the Baltimore City Police Department, within the scope of their employment, without just

cause, probable cause, or other reason, maliciously and actively procured and tackled Plaintiff to the ground, punching him, detaining him and Mr. Corbett, intentionally restricting his freedom, hand-cuffing and falsely arresting Plaintiff.

66. That such false arrest was made without any legal reason or probably causes to believe that the plaintiff was in fact guilty of any criminal conduct, and more particularly dangerous.

67. That said false arrest was made without proper investigation, study, diligence, honesty or reasonable basis.

68. That such false arrest and handcuffing of Plaintiff by defendants were done with actual malice without proper right or justification to do so.

69. Defendants forced Plaintiff to submit to such detention, imprisonment, false arrest, indignities and humiliation resulting there from, entirely against his will.    Plaintiff was intentionally restricted of his freedom during the events by the defendants.

70. That as a direct and proximate result of the actions and conduct by defendants the plaintiff, Howard Fish suffered injuries to his head, face, cervical and lumbar strain, closed head injuries with severe post-traumatic headaches,  injuries  to the knee, hospitalization, physical therapy, medical expenses, past, present and future, other medical treatment and care, mental anguish, post-traumatic stress disorder, loss of enjoyment of life, humiliation, embarrassment, shame, paranoid feelings, lost earnings, sleep disorder, paranoia, anxiety disorder, and other injuries and damages.

WHEREFORE, the plaintiff demands judgment against defendants Officer Allen and Officer Kevin Toade in the sum of One Million Dollars ($1,000,000) as compensatory damages

and Three Million Dollars ($3,000,000) as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

### COUNT V
### (Malicious Prosecution)

71. The plaintiff, Howard Fish, adopts and incorporates each allegation contained in Counts 1 through IV, and paragraphs 1 through 70 as if fully set forth herein.

72. On or about June 7, 2014, defendants Officer Allen, Officer Toade and Dave Peckoo committed multiple batteries against Plaintiff, falsely arrested him, and immediately thereafter maliciously prosecuted him for allegedly committing crime(s) that they knew he had not committed, to justify and/or cover-up their professional misconduct.

73. Following the above defendants assault of plaintiff they filed a criminal incident report which falsely accused plaintiff of assaulting Dave Peckoo.

74. After review of the evidence, on or about November 21, 2014 the charges against plaintiff were dismissed.

75. That the records) clearly shows that the arrest and criminal prosecution instituted and continued against the plaintiff  done in the absence of probable cause, with malice or a primary purpose of instituting a criminal proceeding other than that of bringing the plaintiff to justice. The plaintiff had not committed a crime but had become the victim of assault, battery and "guilty by being black" prosecution by officers of the law.

76. That as a direct and proximate result of the actions and conducts by the defendants caused Plaintiff, Howard Fish, suffered emotional distress, mental anguish, loss of enjoyment of

life, humiliation, embarrassment, shame, sleep disorder, anxiety disorder, and other injuries and damages.

WHEREFORE, the plaintiff demands judgment against defendant Officer Allen and Officer Kevin Toade in the sum of One Million Dollars ($1,000,000) respectively and separately as compensatory damages and Three Million Dollars ($3,000,000) as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

## COUNT VI

### (Intentional Infliction of Emotional Distress)

77. The plaintiff Howard Fish adopts and incorporates each allegation contained in Counts I through V and paragraphs 1 through 76 as if fully set forth herein.

78. That the defendants' actions severally and jointly from on about June 7, 2014 or the date they set into motion the battery and concomitant/subsequent false arrest, malicious prosecution of the plaintiff, were done intentionally and/or recklessly.

79. That the defendants conduct was extreme and outrageous considering presumptively that they were trained to properly exact their duties in an unbiased, fair and reasonable professional manner.  Plaintiff was violently attacked, falsely arrested and subsequently maliciously prosecuted by defendants to justify violent and malicious conduct.

80. That defendants malicious and reckless attack of the plaintiff   coupled with them arresting him without probable cause or without questioning him about the earlier incident with Dave Peckoo, detaining him and then maliciously prosecuting Plaintiff was extreme and outrageous.

81. That as a direct and proximate result of the actions and conduct by defendants Officer Allen, Officer Kevin Toade, and Dave Peckoo, plaintiff, Howard Fish, suffered severe emotional

distress as evidenced by headaches, nightmares, stomach disorders, anxiety reactions, and other physical and psychological injuries.

WHEREFORE, the plaintiff demands judgment against defendants Officer Allen, Officer KevinToade and Dave Peckoo in the sum of One Million Dollars ($1,000,000) as compensatory damages respectively and separately and Three Million Dollars ($3,000,000) as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

## COUNT VII

### (Negligence- Officer Allen and Officer Toade)

82.  The plaintiff Howard Fish adopts and incorporates each allegation contained in Counts 1 through VI and paragraphs 1 through 81 as if fully set forth herein.

83.  That the combatant conduct of Officer Allen and Officer Toade towards the plaintiff when they were investigating a complaint which resulted in the plaintiff being brutally attacked by the defendants and defendant Dave Peckoo was outrageous.  After plaintiff complied with the instructions of defendants Officer Allen and Officer Toade, he was attacked, knocked to the floor, mounted and handcuffed.

84.  The defendants owed an ordinary duty of care to the plaintiff which among other things requires that they interview the parties of an alleged incident, witnesses, and investigate before drawing their own conclusions as to who is at fault.  Moreover, defendants are not to use force [reasonable, excessive or deadly] unless it is reasonably necessitated by the prevailing circumstances.   Plaintiff was an amiable cooperative civilian complying with the orders of the defendants before they attacked him.  To justify their negligent and illegal conduct the defendants arrested the plaintiff and subjected him to criminal prosecution which ultimately culminated in the criminal charge(s) being dismissed.

85.   The defendants breached its duty of ordinary care required of professional police officers and recently mandated by Baltimore Police Department and the U.S. Justice Department Consent Decree.   Police officers have a duty to both enforce the law and to obey the law.  Defendants knew or should have known that their attack of an unarmed, amiable, cooperating civilian did not authorize them to beat him down to the floor and place him under arrest and subjecting him to criminal prosecution.

86.   That as a direct and approximate cause of the defendants' breach of ordinary care in investigating a complaint and their attendant negligent conduct, Plaintiff suffered head injuries, back injury, knee injury, emotional and mental anguish as well as other psychological and physical harm.

87.   Wherefore the plaintiff demands judgment against defendants Officer Allen and Officer Toade in the amount of One Million Dollars ($1,000,000) individually and jointly as compensatory damages and the sum of Three Million Dollars ($3,000,000) for punitive damages, plus interest from the date of the occurrence, attorney fees and costs of this action.

## COUNT VIII

### (Negligence – Baltimore City Police Department)

88.   The plaintiff adopts and incorporates each allegation contained in Counts I through VII and paragraphs 1 through 87 as fully set herein.

89.   That the tortious conduct of defendants Officer Allen and Officer Toade exhibited on June 24, 2014 which resulted in Plaintiff being illegally assaulted by Officers Allen and Toade and being unjustifiably criminally prosecuted represents a long pattern of the Baltimore City Police Department's negligence in properly supervising the conduct of its police officers when policing the African-American community and encountering African- American civilians.

90.   The Baltimore City Police Department breached its ordinary standard of care to the African-American communities as well as to Hispanic communities in the proper training and

supervision of its police officers, including and specifically defendants Officer Allen and

Officer Toade in the proceeding areas: a) freedom from the use of excessive force and

unreasonable force, b) freedom from the deprivation of liberty without due process, c) freedom

from illegal detention, d) freedom from unreasonable search and seizures; and 5) freedom from

unreasonable use of police power.

91.   The Baltimore City Police Departments breached of this duty of ordinary care is a direct

and proximate cause of the severe pain and suffering sustained by the plaintiff.

92.   Wherefore the plaintiff demands One Million Dollars ($1,000,000) in compensatory

damages and Two Million Dollars ($2,000,000) for punitive damages plus interest from the date

of occurrence, plus attorney fees and the costs of this action.


**(Violation of Civil Rights)**

93. The plaintiff Howard Fish adopts and incorporates each allegation contained in

Counts 1 through VI and paragraphs 1 through 92 as if fully set forth herein.

94. That jurisdiction of this Court is obtained under Title 42, U.S.C. Section 1983 as

defendants' Officer Allen and Officer Kevin Toade actions were taken under the color of law

and depriving the plaintiff of his civil and constitutional rights under the Fourth Amendment of

the United States Constitution.

95. That defendants were acting under the color of law.  Their use of excessive force

during an arrest was clearly unreasonable under the Fourth Amendment, and that such conduct in

smashing the plaintiff head-face [with his eye glasses on] to the ground and then jumping on him

while he was on the ground and causing head, facial, back and other enumerated injuries,

violated his Fourth Amendment Rights to be free from excessive force.

96. That Plaintiff Howard Fish was entitled to be free from unreasonable use of force by defendants.

97. That defendants Allen and Kevin Toade never gave Plaintiff any adequate or reasonable warning that he would be assaulted or apprehended by them nor did the defendants have any legal basis for their assault of plaintiff.  Plaintiff was obeying their instructions to approach them yet they maliciously attacked him.

98. That when Plaintiff was intentionally taken to the ground by defendants Officer Kevin Toade and Officer Allen improperly searched and seized the plaintiff in violation of his Fourth Amendment Rights by improperly handcuffing and arresting the plaintiff without any probable cause and maliciously prosecuted the plaintiff to justify their abuse of authority.

99. That as a direct and proximate result of the actions and conduct of defendants Officer Allen and Officer Toade, Plaintiff suffered injuries to his head and back, cervical and lumbar strain, closed head injuries with severe post-traumatic headaches,  facial injuries, suffer injuries to his back and  knee, hospitalization, physical therapy, medical expenses, past, present, and future, other medical treatment and care, mental anguish, severe emotional distress, post-traumatic stress disorder, loss of enjoyment of life, humiliation, embarrassment, shame, paranoid feelings, sleep disorder, anxiety disorder, and other injuries and damages.

WHEREFORE, the plaintiff demands against defendants, Officer Allen and Officer Kevin Toade in the sum of Two Million Dollars ($2,000,000) as compensatory damages and Six Million Dollars ($6,000,000) as punitive damages, plus interest from the date of the occurrence, attorneys' fees, and costs of this action.

Respectfully submitted,

THE INGRAM FIRM, LLC

/s/Damani K. Ingram
Damani K. Ingram, Esq.
Bar No. 26320
5457 Twin Knolls Road
Suite 301
Columbia, MD 21045
(410) 992-6603
Attorney(s) for Plaintiff


## JURY DEMAND

The plaintiff demands a trial by jury for each allegation contained herein.




/s/ Damani K. Ingram
Damani K. Ingram