IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HOWARD FISH, JR. | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-17-1438 |
| BALTIMORE CITY POLICE DEPARTMENT, et al.,[1] | * | |
| Defendants. | * | |

## MEMORANDUM

Now pending are defendants Hyatt Hotels Corporation of Maryland ("Hyatt") and David Peckoo's[2] motion for summary judgment, (Hyatt/Peckoo Mot., ECF No. 68),[3] and defendants Kevin Tode and Christian Allen's motion for partial summary judgment, (Tode/Allen Mot., ECF No. 70). The motions are fully briefed, and no hearing is necessary.[4]

## FACTUAL AND PROCEDURAL HISTORY

This action stems from a series of altercations that occurred late one night at the Hyatt Regency Inner Harbor Hotel ("the hotel") in Baltimore, Maryland. On or about June 7, 2014, plaintiff Howard Fish was invited to the hotel by his friend, Spencer Corbett, who was staying

---

[1] This case was previously captioned *Howard Fish, Jr. v. Mayor and City Council of Baltimore, et al.* The court dismissed all claims against defendant Mayor and City Council of Baltimore on January 10, 2018, and the case caption has been updated accordingly.

[2] Peckoo is alternately referred to as "Dave" and "David."

[3] The docket indicates that the motion for summary judgment was filed by Dave Peckoo Security Company and Hyatt, but on the face of the motion, it appears that Peckoo moves in his individual capacity.

[4] Fish filed a response to Tode and Allen's motion, (ECF No. 74), but Tode and Allen did not timely file a reply. *See* Fed. R. Civ. P. 27(a)(4). In their motion, which was filed on April 12, 2019, Tode and Allen stated that "[c]ertain discovery is not yet complete in the above matter" and that "Defendants Tode and Allen reserve the right to supplement this Motion as additional information becomes known." (Tode/Allen Mot. at 1 n.1). The court, however, has received no additional information from Tode and Allen and thus assumes their motion is complete.

1

there as a guest. When Fish arrived, he, Corbett, and several other friends dined and drank in the Bistro 300 Lounge ("the lounge") in the hotel. Sometime thereafter, two hotel employees approached Fish and his group, informed them that the lounge was closing, and told them that they would need to leave.

Video footage from the lounge depicts the following series of events.[5] At approximately 1:55 a.m., two hotel employees approach Fish and his group. (Video Footage of Bistro 300 Lounge ("Bistro Video") at 8:57–9:19, Pl.'s Opp'n to Hyatt/Peckoo Mot. Ex. 1 (on file with the court)). The hotel employees speak with Fish and his group for approximately one minute. After the exchange, the hotel employees walk away. (*Id.* at 9:19–10:45). Another minute later, the male hotel employee (later identified as Rodney Brown) approaches the group again, shortly followed by a man later identified as Peckoo, a plain-clothed security officer employed by the hotel. While Brown speaks to the group, Peckoo first observes the interaction from several feet away, (*id.* at 11:47–12:40), then walks closer, (*id.* at 12:45). As Peckoo approaches, Fish, who had been seated, stands up and points his finger at Peckoo. (*Id.* at 12:50). Other members of the group also stand up, and the situation quickly escalates. Fish continues to speak to Peckoo while pointing his finger at him. A female member of the group appears to be pushed onto a couch by either Fish or another male member of the group. (*Id.* at 13:07).

At this point, a pillar in the center of the lounge partially obscures the altercation from view, but it is apparent that the situation becomes increasingly heated. At one point, Fish and Peckoo are inches apart. (*Id.* at 13:38). Two female members of Fish's group are shown holding Fish's arms, apparently trying to hold him back, as Peckoo backs up. (*Id.* at 13:38–14:04). The women let go of Fish, Fish continues to advance on Peckoo, and Peckoo grabs Fish's arm. (*Id.* at

---

[5] The video has no sound.

2

14:06–14:11). Fish and Peckoo then begin shoving each other. (*Id.* at 14:11–14:29). The shoving abates, but the two men continue their verbal exchange. (*Id.* at 14:29–15:50). A little over a minute later, a male member of Fish's group grabs Fish's arm, appearing to hold him back from Peckoo. (*Id.* at 15:55). The man then gets between Peckoo and Fish, and the three men move behind the pillar. (*Id.* at 16:00). When the men come back into view, they are again shoving each other, and a female member of Fish's group—who was between Peckoo and Fish—falls to the floor. (*Id.* at 16:03). With his arms up, Fish again advances on Peckoo, who takes a few steps back and then extends his arm towards Fish's face or throat. (*Id.* at 16:05–08). Fish knocks Peckoo's arm away, puts his hands near Peckoo's face, and continues to advance. (*Id.* at 16:09–12). Fish then pushes Peckoo out of the frame. (*Id.* at 16:13). Peckoo moves quickly at Fish, and Fish punches Peckoo in the face. (*Id.* at 16:14–16). The two men are then held back by others, and Peckoo exits the frame. (*Id.* at 16:35). The last two minutes of the video show Fish speaking with his group, some of whom still appear to be restraining him, and interacting with Brown. (*Id.* at 16:35–18:55).

Immediately after this altercation, the Baltimore City Police Department was called. (Brown Depo. at 53:7–13,[6] Pl.'s Opp'n to Tode/Allen Mot. Ex. 3, ECF No. 74-2). The police arrived at approximately 2:15 a.m. (*Id.* at 54:7–9). Video footage of another area of the hotel captured Fish's interaction with the police. (Video Footage of hotel hallway ("Hallway Video") at 0:01, Pl.'s Opp'n to Hyatt/Peckoo Mot. Ex. 2 (on file with the court)). The video depicts the following events. Fish is standing in the hallway, apparently speaking with four police officers. The police officer on Fish's far right (later identified as Allen) puts his hand on Fish's arm, and

---

[6] Citations to page and line numbers of depositions correspond to internal pagination, not page numbers assigned by CM/ECF.

then the police officer to Fish's left grabs Fish's other arm. The two officers appear to be attempting to put Fish's hands behind his back, which Fish appears to resist. (*Id.* at 00:08–13). Fish bends over at the waist, and Fish and the two officers fall to the ground. A scuffle ensues on the floor, which is only partially visible, as other officers are standing over Fish. (*Id.* at 00:16–18). Fish remains on the floor, initially face down, but then is rolled over. (*Id.* at 00:51). At this point, Fish is largely blocked from view, but is clearly sitting up. (*Id.* at 00:55). After several minutes, during which Fish remains seated on the floor and apparently handcuffed, (*id.* at 00:55–6:40), two officers lift Fish to his feet from either side and lead him out of the frame. (*Id.* at 6:43–51).[7]

Fish filed a complaint in this court on May 24, 2017. He filed his first amended complaint on June 25, 2017, asserting claims against defendants Mayor and City Council of Baltimore ("Baltimore City"), Baltimore City Police Department ("BPD"), Tode, Allen, Hyatt, Peckoo, Bistro 300 Lounge, and Dave Peckoo Security Company. On January 10, 2018, the court dismissed all claims against Baltimore City, the state law claims against BPD, and the assault claims against Hyatt and Peckoo. (Memorandum and Order, ECF Nos. 36, 37). Fish filed a second amended complaint on February 1, 2018, reasserting claims against all defendants except Baltimore City. (ECF No. 40).[8, 9]

Fish's remaining claims against Peckoo and Hyatt are Battery (Count II) and IIED (Count

---

[7] The video continues for approximately fifty more minutes, but Fish does not again appear in the video.
[8] On April 18, 2018, the court granted BPD's motion to bifurcate claims against BPD from claims against all other defendants, and to stay all discovery against BPD as to the bifurcated claims until the final resolution of all claims against the other defendants. (Order, ECF No. 48).
[9] Bistro 300 Lounge is named as a defendant, but it appears that it was never served. More than 90 days have passed since Fish filed his second amended complaint. The court will thus dismiss all claims against Bistro 300 Lounge without prejudice. Fed. R. Civ. P. 4(m).

4

VI).[10, 11] Fish's claims against Tode and Allen are: Battery (Count II); Violation of Maryland Declaration of Rights, Articles 24 and 26 (Count III); False Arrest (Count IV); Malicious Prosecution (Count V); Intentional Infliction of Emotional Distress ("IIED") (Count VI); Negligence (Count VII); and Violation of Civil Rights (Count VIII).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam)

---

[10] In their motion for summary judgment, Peckoo and Hyatt state that a negligence claim is "possibly" pending against them. (Hyatt/Peckoo Mot. at 7). As the Second Amended Complaint only asserts negligence claims against Allen and Tode, the court will not address any negligence claims against Peckoo and Hyatt.

[11] Hyatt, Peckoo, and Dave Peckoo Security Company are all named as defendants in the Second Amended Complaint, but it appears that Fish only asserts claims against Peckoo in his individual capacity. Fish does allege, however, "[t]hat at all times hereinafter mentioned, defendant Dave Peckoo was an employee, agent or sub-contractor with the Hyatt Regency Corporation, or he was an employee with John Doe Security Company providing security guard service for the Hyatt Regency Baltimore Inner Harbor Hotel to the Bistro 300 Restaurant." (Second Am. Compl. ¶ 30). Moreover, in their motion for summary judgment, Peckoo and Hyatt refer to themselves as the "Hyatt Defendants," signaling to the court that Hyatt concedes that claims against Peckoo are also asserted against Hyatt. The court will assume that the "Hyatt Defendants" encompass Peckoo, Hyatt, and Dave Peckoo Security Company. As Fish does not plead any distinction between Peckoo and "Dave Peckoo Security Company," the court will treat them as one defendant. The court also assumes that references to "John Doe Security Company" in the second amended complaint are in error, and that Fish intended to refer to "Dave Peckoo Security Company."

5

(citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### I. Claims against Hyatt and Peckoo

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Summary judgment is proper when there is evidence "of undisputed authenticity that shows some material element of the plaintiff's account to be blatantly and demonstrably false." *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) (quoting *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007)) (internal quotation marks omitted). When "the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

#### A. *Battery*

In Count I of the Second Amended Complaint, Fish claims that Peckoo, "acting within the scope of his employment intentionally verbally and physically assaulted the plaintiff."

(Second Am. Compl. ¶ 54).[12] Over the course of this litigation, Fish has repeatedly described an altercation in which Peckoo was the initial aggressor. (Second Am. Compl. ¶¶ 35–38; Fish Depo. at 87:18–93:12, Hyatt/Peckoo Mot. Ex. A, ECF No 68-1; Pl.'s Opp'n to Hyatt/Peckoo Mot. at 2, ECF No. 76-1). The video evidence, however, contradicts Fish's claims.

Fish states that he first saw Peckoo when he "rushed to the table as a very aggressive and angry stranger." (Second Am. Compl. ¶ 35). The video, however, shows Peckoo walk slowly toward Fish and his group, (Bistro Video at 12:07), observe a conversation between Brown and the group from several feet away, (id. at 12:07–40), and then walk closer to directly interact with the group, (id. at 12:45). Peckoo's approach to Fish and his group cannot be reasonably interpreted as "rushing" or "very aggressive." Fish then claims that Peckoo "rushed plaintiff, pushing him whereupon plaintiff responded in kind in an act of self-defense" and "quickly retreated." (Second Am. Compl. ¶ 38). This recitation of facts implies a brief altercation in which Fish only makes physical contact with Peckoo once. The video, by contrast, shows an altercation that escalates over the course of several minutes, during which Fish never appears to retreat. Indeed, the video shows Peckoo standing still as Fish moves close to him, (Bistro Video at 13:37), and then shows Peckoo backing away from Fish, (id. at 14:00–12). The only time Peckoo appears to "rush" at Fish is after the physical altercation is already underway, just before Fish punches Peckoo in the face. (Id. at 16:13–16:16).

While it is not clear from the video who touched whom first, Fish's body language was plainly more aggressive earlier in the altercation: When the men first begin interacting verbally,

---

[12] Fish also includes Peckoo in Count II, in which he asserts battery allegations against Peckoo, Tode, and Allen. Fish appears to claim that Peckoo "intentionally and maliciously tackled the Plaintiff to the ground and repeatedly punched him to the face and elsewhere." (Second Am. Compl. ¶ 59). In Fish's recitation of facts, however, there is no allegation that Peckoo tackled or punched Fish, only that Peckoo "rushed" and "pushed" him. (Id. ¶¶ 37–38). Moreover, the video does not depict Peckoo tackling or punching Fish at any point. The court thus assumes that the allegations of tackling and punching pertain only to Tode and Allen.

7

Peckoo stands with his hands by his sides or in his pockets, while Fish repeatedly points his finger in Peckoo's face, (Bistro Video at 13:02–16); when Peckoo backs away with his hands by his sides, Fish advances as his friends hold back his arms, (*id.* at 13:30–14:12); and when Peckoo finally appears to make physical contact with Fish, it is by grabbing Fish's outstretched arm, (*id.* at 14:10–15). The court thus finds that Fish's claim that Peckoo was the initial aggressor is not supported by the video evidence.

Fish also makes two claims in the Second Amended Complaint that he seemingly retracted during his deposition. First, Fish states in the Complaint that "Peckoo pushed Mr. Corbett" before the altercation between Fish and Peckoo began. (Second Am. Compl. ¶ 37). Fish testified at his deposition, however, that Peckoo never grabbed or hit Corbett, (Fish Depo. at 93:17–22).[13] Second, Fish states in the Complaint that "one of their female companions [was] knocked to the floor by Dave Peckoo." (Second Am. Compl. ¶ 37). But in his deposition, Fish stated that the woman was not pushed to the floor by Peckoo. (Fish Depo. at 99:12–22).

Based on the evidence in the record, the court finds that no reasonable jury could believe Fish's version of events, and thus cannot "adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Viewing "the facts in the light depicted by the videotape," *id.* at 380–81, the court finds that any harmful or offensive contact by Peckoo[14] was in justifiable self-defense. *See Richardson v. McGriff*, 361 Md. 437, 453 (2000) ("Self-defense is a defense to the common law tort of battery.") (internal citation omitted). Accordingly, Hyatt and Peckoo are entitled to summary judgment on the battery claim.

---

[13] The video also shows no physical confrontation between Peckoo and Corbett.
[14] Fish's allegations of "verbal[] . . . assault" do not constitute battery. *See Nelson v. Carroll*, 355 Md. 593, 600 (1999) ("A battery occurs when one intends a harmful or offensive contact with another without that person's consent.")

8

### B. *Intentional Infliction of Emotional Distress*

In Count VI of the Second Amended Complaint, Fish asserts an IIED claim against Peckoo. The tort of IIED requires four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Harris v. Jones*, 281 Md. 560, 566 (1977). This tort is "rarely viable" and should be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514 (1995) (quoting *Kentucky Fried Chicken Nat'l Mgmt. v. Weathersby*, 326 Md. 663, 670 (1992)). Based on a review of the video evidence, the court finds that Peckoo's conduct was neither extreme nor outrageous. *See supra* Part I(A). Fish's IIED claim thus fails.

## II. Claims against Officers Tode and Allen

### A. *Battery*

In Count II of the Second Amended Complaint, Fish claims that Tode and Allen, "acting within the scope of their respective employment intentionally and maliciously tackled the Plaintiff to the ground and repeatedly punched him to the face and elsewhere." (Second Am. Compl. ¶ 59).[15] At his deposition, however, Fish admitted that "there was just one police officer involved in . . . the incident . . . where [he] [was] thrown to the ground." (Fish Depo. at 104:9–12, Tode/Allen Mot. Ex. A, ECF No. 71-2). Fish later testified that the police officer who "threw [him] down" was a black man, (*id.* at 121:3–9), and that Fish believed the black man was Tode,

---

[15] As noted *supra* note 11, Count II also includes a battery allegation against Peckoo. The allegations of Count II, however, appear only to apply to Tode and Allen, and nothing in Count II can be construed as asserting an additional battery charge against Peckoo.

9

(*id.* at 122:12–123:2). Tode is a white man. The black man who Fish described was, in fact, Allen. (Allen Depo. at 39:10–40:5, Tode/Allen Mot. Ex. B, ECF No. 71-2). According to the video of Fish's arrest, Tode never made physical contact with Fish.[16] (Hallway Video at 00:00–20). The court thus finds no evidence to support a battery claim against Tode.

### B. *Violations of the Maryland Declaration of Rights and 42 U.S.C. § 1983*

In Count III, Fish claims that Tode and Allen's actions violated Articles 24 and 26 of the Maryland Declaration of Rights. In Count VIII, Fish claims that the use of excessive force also violated 42 U.S.C. § 1983.[17] Specifically, Fish claims that Tode and Allen's actions—"throwing [Fish] to the ground headfirst . . . handcuffing him, arresting him, detaining him and subsequent wrongful prosecution"—violated his rights under the Maryland constitution, (Second Am. Compl. ¶ 63), and that Tode and Allen's "conduct in smashing the plaintiff [sic] head-face [with his eye glasses on] to the ground and then jumping on him while he was on the ground" violated his Fourth Amendment rights, (*id.* ¶ 96). The court construes the allegations in Count III as an excessive force claim, a false arrest claim, and a malicious prosecution claim.[18] As Fish re-asserts his false arrest and malicious prosecution claims in Counts IV and V, respectively, the

---

[16] At his deposition, Tode was shown the video of the arrest and asked to identify himself. Tode indicated that, at all points during the interaction, Tode was the officer on the far left of the screen. (Tode Depo. at 47:11–16, 48:20–49:5, 49:20–50:4, Tode/Allen Mot. Ex. C, ECF No. 71-3).

[17] § 1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[18] In his second amended complaint, Fish claims that Tode and Allen deprived him "of the following clearly established constitutional rights, . . . including, but not limited to: (a) Freedom from the use of excessive and unreasonable force; (b) Freedom from the deprivation of liberty without due process of law; (c) Freedom from illegal detention; (d) Freedom from unreasonable searches and seizures; and (e) Freedom from unreasonable use of police power." (Second Am. Compl. ¶ 63, ECF No. 40). The court, however, cannot fill in the gaps of Fish's complaint, and will only address those of Fish's claims that are supported by factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions[.]") (internal citation and quotation marks omitted).

10

court will only address the excessive force claims in this subsection.

The Fourth Amendment of the U.S. Constitution and Articles 24 and 26 of the Maryland Declaration of Rights prohibit the police from using excessive force during a seizure. *See Henry v. Purnell*, 652 F.3d 524, 531, 536 (4th Cir. 2011) (internal citations omitted). The standards for analyzing excessive force claims under the Fourth Amendment and the Maryland Declaration of Rights are the same. *Id.* at 536. Accordingly, the court will address Fish's Maryland constitutional claims and his § 1983 claims together. "Whether an officer has used excessive force is analyzed under a standard of objective reasonableness." *Id.* at 531 (citing *Scott*, 550 U.S. at 381). "At the summary judgment stage, once [the court] ha[s] viewed the evidence in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law." *Id.*

As Fish presents no evidence that Tode made physical contact with him, *see supra* Part II(A), Tode is entitled to summary judgment on the excessive force claims against him. With respect to the claims against Allen, Fish appears to rely solely on the video of the arrest as evidence of excessive force. (Pl.'s Opp'n to Tode/Allen Mot. at 5). The video, however, does not support Fish's version of events. The video does not show Allen "throwing" or "smashing" Fish to the ground, nor does it show Allen "jumping on [Fish] while he was on the ground." The video shows an altercation lasting less than twenty seconds: Allen and another officer attempt to place Fish's hands behind his back; Fish moves his arms erratically; all three people fall to the floor. (Hallway Video at 00:00–15). Even assuming that Fish ended up on the floor because of the police officers' application of force,[19] the court finds that Allen's actions were objectively

---

[19] At his deposition, Allen stated that Fish "lurched forward" once his hands were behind his back, resulting in Allen, Fish, and the other officer falling to the ground. (Allen Depo. at 57:20–59:3).

reasonable. Allen and the other police officers arrived at the hotel in response to an alleged assault. Before interacting with Fish, the officers spoke with Peckoo, who was visibly injured[20] and claimed to have been assaulted by Fish. The video then shows Fish, a physically larger man than Allen, appear to resist being placed in handcuffs. In light of these circumstances, the court finds that the force used to take Fish to the ground was objectively reasonable. Accordingly, Allen is entitled to summary judgment on the excessive force claims against him.

### C. *Malicious Prosecution*

Count V of the Second Amended Complaint is a malicious prosecution claim against Tode and Allen.[21] A claim of malicious prosecution requires that: (1) a criminal proceeding was instituted or continued by the defendant against the plaintiff; (2) the proceeding was terminated in favor of the accused; (3) there was an absence of probable cause for the proceeding; and (4) the defendant acted with malice, or acted with "a primary purpose . . . other than that of bringing an offender to justice." *Krashes v. White*, 275 Md. 549, 554 (1975). In the context of a malicious prosecution claim, probable cause means "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *See One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) (quoting *N. Point Const. Co. v. Sagner*, 185 Md. 200, 208–09 (1945)).[22]

---

[20] According to Tode, when the police arrived at the hotel, Peckoo was bleeding from a cut to his top lip and his bottom lip was swollen. (Pl.'s Opp'n to Tode/Allen Mot. Ex. 4, ECF No. 74-2).

[21] Fish initially appears to include Peckoo in the malicious prosecution claim, (Second Am. Compl. ¶ 73), but then clarifies that the factual allegations underlying the claim include only "the arrest and criminal prosecution instituted and continued against the plaintiff," (*id.* ¶ 76). As Fish has not alleged that Peckoo participated in the arrest or prosecution, the court will not address a malicious prosecution claim against him.

[22] While in *Guerriero*, the Court of Appeals defined probable cause with respect to malicious use of process claims, the same definition applies to malicious prosecution claims. *Guerriero*, 346 Md. at 36–37 ("Actions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous, with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding.").

Tode filed second degree assault charges against Fish for the alleged assault on Peckoo, indicating that probable cause was based on a conversation with Peckoo at the scene and a review of the video evidence. (Pl.'s Opp'n to Tode/Allen Mot. Ex. 4, ECF No. 74-2). Fish argues that because Tode and Allen did not review the video evidence until after Fish was arrested, no probable cause existed for the assault charge. The court disagrees. Even assuming criminal proceedings were initiated before Tode and Allen viewed the video, *see Krashes*, 275 Md. at 555 ("[T]he making of an arrest may often be the first official action in a criminal proceeding."), probable cause existed to initiate a second degree assault charge against Fish. According to Brown, whose version of events Fish appears to credit, Tode and Allen spoke to Peckoo immediately upon arriving at the hotel. (Brown Depo. at 92:18–93:15). Brown overheard Peckoo tell Tode and three other officers (one of whom was Allen) that he was assaulted and injured by Fish. (*Id.* at 93:9–15). The court finds that Peckoo's statements provided Tode and Allen "a reasonable ground for belief in the existence of such state of facts" to support second degree assault charges against Fish. *See Guerriero*, 346 Md. at 37; *cf. Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 434 (7th Cir. 1986) ("Police often arrest suspects on the basis of oral reports from witnesses[.]").[23] Fish's malicious prosecution claim thus fails.

### D. *Intentional Infliction of Emotional Distress*

In Count VI, Fish asserts IIED claims against Tode and Allen. As explained in Part I(B), *supra*, an IIED claim requires a showing of "extreme and outrageous conduct." *See Jones*, 281 Md. at 566. This is a very high standard; "[l]iability has been found only where the conduct has

---

[23] In his Response, Fish claims that, in his deposition, Tode "admits there was no probable cause to arrest Mr. Fish." (Pl.'s Opp'n to Tode/Allen Mot. at 9). Not so. Tode stated that he could not recall certain details about the arrest (which was over four years before the deposition), but at no point did he admit that the arrest or later filing of charges was without probable cause. (Tode Depo. at 88:11–89:4, Pl.'s Opp'n to Tode/Allen Mot. Ex. 8, ECF No. 74-2).

been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hines v. French*, 157 Md. App. 536, 558 (2004) (quoting *Weathersby*, 326 Md. at 670). Fish claims that Tode and Allen "viciously attacked, falsely arrested and subsequently maliciously prosecuted" him, resulting in "severe emotional distress." (Second Am. Compl. ¶¶ 80–82). Tode and Allen argue that even viewing the evidence in the light most favorable to Fish, none of Tode and Allen's alleged actions rose to the level of "extreme and outrageous" conduct. The court agrees. *See Hines*, 157 Md. App. at 558 (finding that a police officer's pretextual stop of the plaintiff, disregard for her visible injury, laughter at causing her pain, and refusal to loosen her handcuffs was not extreme and outrageous conduct).[24] Accordingly, Tode and Allen are entitled to summary judgment on the IIED claims.

### E. *Negligence*

In Count VII, Fish asserts negligence claims against Tode and Allen. Police officers are public officials who enjoy public official immunity from suit for negligent acts performed during the course of their discretionary duties, *Houghton v. Forrest*, 412 Md. 578, 585 (2010), so long as they act without malice or gross negligence, *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015). Malice is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre v. Pope*, 402 Md. 157, 182 (2007). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard

---

[24] Moreover, in his Response, Fish does not address or point the court to any evidence in the record that would support his IIED claim. In fact, Fish does not address the IIED claim in his response at all. *See Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 394 (4th Cir. 1994) (holding that a claim did not survive summary judgment when the plaintiff failed to adequately rebut the defendant's assertion that no evidence existed to support the claim).

14

of the consequences without the exertion of any effort to avoid them." *Id.* at 187 (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)).

Fish claims that Tode and Allen breached their "ordinary duty of care" by failing to thoroughly investigate the incident before arresting Fish and negligently using excessive force during the arrest (Second Am. Compl. ¶ 85). Conducting investigations and arresting suspects are discretionary functions, *see Houghton*, 412 Md. at 585 (citing *Schneider v. Hawkins*, 179 Md. 21, 25 (1940)); without evidence of malice or gross negligence, Tode and Allen are immune from suit. As a threshold matter, it is not clear to the court that Fish adequately alleges Tode and Allen acted with malice or gross negligence. The repeated use of the phrase "ordinary duty of care" in Count VII of the Second Amended Complaint suggests that Fish merely states claims of simple negligence. *See Stracke v. Estate of Butler*, 465 Md. 407, 422 (2019) (noting that "first responders [are] stripped of the protective shield that the immunity was intended to provide" when they are "forc[ed] . . . to go through the entire litigation process when there is only evidence of simple negligence").

Even if Fish does adequately allege malice or gross negligence, he presents insufficient evidence to support his claims. In his Response, Fish states that the video evidence and the depositions of Fish and Elisa Briggs provide enough evidence of malice and gross negligence to survive summary judgment. (Pl.'s Opp'n to Tode/Allen Mot. at 7). The court disagrees. Neither the testimony nor the video provides any evidence of the police officers' states of mind, and a sufficiently culpable state of mind cannot be inferred from the conduct described or depicted. *See Strake*, 465 Md. at 421 ("Only conduct that is of extraordinary or outrageous character will be sufficient to imply th[e] state of mind [of wanton or reckless disregard for human life]."). Fish's statements at his deposition largely mirror those in his complaint: he testified that the police

officer "grabbed me and threw me down" and "slammed my head to the ground and broke my glasses." (Fish Depo. at 122:1–9, Pl.'s Opp'n to Tode/Allen Mot. Ex. 7, ECF No 74-2). In her deposition, however, Briggs initially stated that one of the police officers "threw [Fish] to the floor," but then immediately clarified that "[i]t was so fast, I don't know how [Fish got to the floor] . . . the last thing I know, he was just on the floor." (Briggs Depo. at 60:9–16, Pl.'s Opp'n to Tode/Allen Mot. Ex. 5, ECF No 74-2). Briggs also stated that the officer did not punch Fish in the face or slam his head into the floor. (*Id.* at 60:20–61:4). The video shows a brief altercation, lasting less than a minute, where Fish is taken to the ground by two officers, rolled onto his back, and then sat up. (Hallway Video at 00:00–55). Viewing this evidence in the light most favorable to Fish, the court does not find sufficient evidence of malice or gross negligence, nor does the court find that the police acted in an extraordinary or outrageous manner. Accordingly, Fish's negligence claim fails.[25]

## III. Punitive Damages

Fish claims that he is entitled to punitive damages from Tode and Allen. In order to properly plead a claim for punitive damages for Maryland state law claims, a plaintiff must "allege, in detail, facts that, if proven true, would support the conclusion that the act[s] complained of was done with 'actual malice,'" "in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Scott v. Jenkins*, 345 Md. 21, 37, 33 (1997) (abrogated by statute on other grounds). Similarly, punitive damages for § 1983 claims are only available when a plaintiff can show that the defendant acted with "reckless

---

[25] In his Response, Fish states that proof of malice "does not require evidence of spite, hatred, personal enmity or a desire for revenge." (Pl.'s Opp. to Tode/Allen Mot. at 7). This may be so, but to demonstrate malice, Fish was nevertheless required to make some showing that Tode and Allen acted with an improper purpose. *See Cray Commc'ns,* 33 F.3d at 394.

or callous indifference to the federally protected rights of others," or engaged in "conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Here, Fish presents no evidence that either Tode or Allen acted with actual malice, reckless or callous indifference, or evil intent. *See supra* Part II(E). Fish thus fails to show he is entitled to punitive damages for his state or federal law claims.

## CONCLUSION

For the foregoing reasons, the court will grant Hyatt and Peckoo's motion for summary judgment, and Tode and Allen's motion for partial summary judgment. The false arrest claims against Tode and Allen and the battery claim against Allen remain in the case at this time. Counsel will be contacted to discuss how these claims may be resolved.

12/9/19
Date

CCB
Catherine C. Blake
United States District Judge